**CHRYSLER–PLYMOUTH CITY, INC., Appellant,**

v.

**Robert S. GUERRERO and wife, Maria E. Guerrero, Appellees.**

**No. 16472.**

Court of Civil Appeals of Texas, San Antonio.

June 3, 1981.

Rehearing Denied June 30, 1981.

Frank S. Morrill, Jack M. McGinnis, San Antonio, for appellant.

Paul B. Keller, San Antonio, for appellees.

## OPINION

KLINGEMAN, Justice.

This is a suit by Robert S. Guerrero and Maria E. Guerrero to recover treble damages and attorney's fees for breach of an express warranty under the Texas Business and Commerce Code and for false, misleading or deceptive acts or practices under the Texas Deceptive Trade Practices and Consumer Protection Act. The Guerreros, appellees here, purchased a used automobile from Chrysler-Plymouth City, appellant here, and received a written warranty. The automobile had, prior to coming into possession of appellant, been involved in a collision which caused it substantial damage. Appellees were not aware of such previous wreck at the time they purchased the automobile and were not told about it. Appellees experienced a number of difficulties with the car which were never satisfactorily resolved by appellant. About a year after appellees purchased the car it was involved in another accident, causing some damage to the right front fender and to other parts of the car. At this time appellees first learned that the car had been involved in a previous collision which had caused damages to the car. Appellees then brought this suit. Trial was to a jury who found that Chrysler-Plymouth City represented that the car was of a particular condition or quality when it was of another; that such representation was a producing cause of damages to plaintiffs; that Chrysler-Plymouth failed to disclose to the plaintiffs that the car had been previously damaged, repaired and sold for salvage; that such failure to disclose was a false, misleading or deceptive act or practice; that such failure to disclose was a producing cause of damage to plaintiffs; that Chrysler-Plymouth City made an express warranty to plaintiffs that the car was of top quality; that the car was not of top quality; that such breach of express warranty was a producing cause of damages to plaintiffs; that the plaintiffs actually paid $3,993.50 for the car; that the fair market value of the car as delivered to the plaintiffs was $2,500; that reasonable attorney's fees for the plaintiffs' attorneys would be $3,500 in the trial court, $1,000 additional if appealed to the court of civil appeals, and $500 additional if an application for writ of error to the supreme court were made. Based upon the verdict of the jury, the court awarded plaintiffs $4,480.50, which was the actual damages trebled; $3,500 attorney's fees; and $1,500 additional attorney's fees if the case is appealed as high as the supreme court.

On September 19, 1975, Mrs. Guerrero visited the used car lot of Chrysler-Plymouth City to purchase a used car she had seen in a newspaper advertisement. The car advertised was no longer available so she talked to Dean Billet, a salesman, about another car on the lot, a 1974 Monte Carlo. Mrs. Guerrero and her sister-in-law, who had accompanied her to the lot, drove the Monte Carlo to Mr. Guerrero's place of employment. He returned with them to the lot and the Guerreros, after negotiating the sale and securing financing, purchased the car. The car was financed through Lackland National Bank. The car was sold to the Guerreros with a written warranty which was entitled "Chrysler-Plymouth City Top Quality Warranty". The warranty listed the particular parts which it covered and it was signed by Mr. Guerrero. Shortly thereafter, the Guerreros began experiencing problems with the Monte Carlo,

including carburetor, battery, and steering trouble. They noticed the steering wheel was off-center and the car tracked sideways. They returned the car a number of times to Chrysler-Plymouth City for these repairs and were never charged for such work on the car. The Guerreros were still not satisfied with the repair results and, after the warranty expired and after being told by Chrysler-Plymouth that it could not repair the car forever, the Guerreros began taking the car to other places for repairs.

In October of 1976, Mrs. Guerrero was driving the Monte Carlo when she was involved in a collision. The car was taken to Mission Chevrolet where it was discovered that the car had sustained major damage in a previous accident. The car was covered with Bondo, or body filler, over about 90 per cent of its surface.

On this appeal appellant basically contends (1) that there is either no evidence or factually insufficient evidence to support the jury finding that the fair market value of the automobile as delivered to plaintiffs was $2,500; (2) that the court erred in admitting Robert Guerrero's testimony as to market value of the automobile because he was not qualified to give such an opinion; (3) that there is either no evidence or factually insufficient evidence that appellant made an express warranty to plaintiffs that the automobile was of top quality; (4) that the court erred in entering judgment on the verdict that a warranty of top quality was given since the warranty given was expressly limited to parts and repairs for a given period of time; (5) that the trial court erred in permitting the introduction of testimony and documentary evidence and submitting special issues which referred to the automobile as "sold for salvage" or "salvaged"; (6) that the trial court erred in submitting special issues containing reference to a fact not shown in the evidence, that is, that the automobile had been "sold for salvage"; (7) that the trial court erred in admitting the title history of the automobile; (8) that the trial court erred in entering judgment for the plaintiffs because they failed to submit an issue and secure a finding that appellant's breach of express warranty was a proximate cause of any loss sustained by plaintiffs; (9) that the trial court erred in refusing to submit the definition of proximate cause properly requested by appellant; (10) that there is either no evidence or factually insufficient evidence that appellant's breach of express warranty was a proximate cause of any loss sustained by plaintiffs; (11) that there is either no evidence or factually insufficient evidence to support the jury's finding as to reasonable attorney's fees of plaintiffs' attorney; (12) that there is no evidence appellant was given written notice of plaintiffs' complaint before suit was filed; and (13) that the trial court erred in instructing the jury that a "false, misleading, or deceptive act or practice" means any conduct which is either false or has the capacity or tendency to mislead or deceive the ignorant, the unthinking and credulous.

In this opinion we will discuss the points of error under the following general areas: (1) evidence of fair market value; (2) express warranty of top quality; (3) sold for salvage; (4) deceptive trade practice; (5) notice of complaint; (6) proximate cause; and (7) attorney's fees.

## FAIR MARKET VALUE

By three points of error appellant contends: (1) that there is either no evidence or factually insufficient evidence to support the jury's finding that the fair market value of the automobile as delivered to appellees was $2,500; and (2) that the court erred in admitting Robert Guerrero's testimony as to the market value of the automobile because he was not qualified to give such an opinion.

It is well settled that the owner of personal property can testify as to its value. *Classified Parking System v. Kirby*, 507 S.W.2d 586 (Tex.Civ.App.—Houston [14th Dist.] 1974, no writ); *Barstow v. Jackson*, 429 S.W.2d 536 (Tex.Civ.App.—San Antonio 1968, no writ). This court in *Barstow v. Jackson, supra*, said:

The owner of property can testify as to his opinion of the value of such property

though he may be unable to qualify himself as such a witness to like property belonging to another.
*Hillin v. Hagler*, 286 S.W.2d 661 (Tex.Civ. App.—Fort Worth 1956, no writ); 3 Wigmore, Evidence, § 716, p. 48 (1940). This Court in *Cortez v. Mascarro*, 412 S.W.2d 342 (1967, no writ), said: 'The general rule is that anyone familiar with the value of the thing in question is competent to give his opinion as to value. In the absence of a request for voir dire examination, the competency of the witness is established by his statement that he knows the value of the article in question. 2 McCormick, Texas Law of Evidence, § 1422, p. 260 (1956). The strength or weakness of the qualifications of the witness is merely a factor to be considered in weighing his testimony. *Johnson v. Egert*, 233 S.W.2d 958 (Tex.Civ.App.— 1950, writ ref'd n. r. e.).'
*Id.* at 538. The testimony of the owner that he knows the value of the property is sufficient to qualify him to give an opinion. *National Surety Corporation v. Seale*, 499 S.W.2d 753 (Tex.Civ.App.—Dallas 1973, *aff'd*, 506 S.W.2d 579 (Tex.1974).

■ It is well settled that the qualifications of a witness to testify on the question of value is primarily to be determined by the trial court, and the ruling of the trial judge will not be disturbed on appeal unless it is so clearly wrong as to show an abuse of discretion. *Slack v. Magee Heirs*, 252 S.W.2d 274, (Tex.Civ.App.—Galveston 1952), *aff'd*, 152 Tex. 427, 258 S.W.2d 797 (1953); *Foley Bros. Dry Goods Co. v. Settegast*, 133 S.W.2d 228 (Tex.Civ.App.—Galveston 1939, writ ref'd).

■ Mr. Guerrero testified that he was the owner of the car and that he knew its fair market value as delivered to him. He stated the value at $1,200. Mr. Guerrero testified that he had owned a number of automobiles and that he had bought and sold such cars that he had owned. There was other testimony as to the value of the automobile on the date involved and there was quite a variance of opinion with a range of testimony ranging from a low of

$1,200 to a high of $4,400. The witness who testified as to the $4,400 value testified that his opinion would be affected if the car had 90 per cent Bondo on the surface and if he could detect it. The same witness further testified that he had no opinion of the market value of a car that had these defects that this car was alleged to have. The amount of damages found by the jury of $2,500 was well within the range of damage testimony of the witnesses. It is the province of the jury to judge the credibility of the witnesses and the weight to be given their testimony, and this is generally true of expert witnesses as well as lay witnesses. *In re Hensarling*, 590 S.W.2d 639 (Tex.Civ. App.—Tyler 1976, writ ref'd n. r. e.). The trier of the facts is not bound by the testimony of any one witness as to the amount of damages and can accept portions of the testimony and reject other portions. *City of Houston v. Raborn*, 409 S.W.2d 480 (Tex. Civ.App.—Waco 1966, writ ref'd n. r. e.); *McConnico v. Texas Power & Light Co.*, 335 S.W.2d 397 (Tex.Civ.App.—Beaumont 1960, writ ref'd n. r. e.); *Coastal Transmission Corp. v. Lennox*, 331 S.W.2d 778 (Tex.Civ. App.—San Antonio 1960, no writ). Under the record there was sufficient evidence to support the jury's finding that the car was worth $2,500 at the time it was sold to appellees.

## EXPRESS WARRANTY OF TOP QUALITY

The purchasers, the Guerreros, were given an original warranty which is entitled to Chrysler-Plymouth City Top Qualify Warranty. The pertinent portions of such written warranty state:

This Warranty is issued by the undersigned, an authorized Chrysler-Plymouth Dealer.
NAME Robert S. Guerrero ADDRESS 1443 E. Pyron
CITY San Antonio STATE Texas (hereinafter called the Purchaser) in consideration of the purchase of a "Top Quality" Designated used motor vehicle (hereinafter called the Vehicle) described as follows:

In addition to the written warranty, there is testimony by Mrs. Guerrero that one of the salesmen for Chrysler-Plymouth City told her before she bought the car that: it was one of the best cars on the lot and that he was driving the car himself; that if he had been able to afford the car he would have bought it himself; and that it was a perfect car and was in perfect condition.

■ Appellant urges that the use of the term "Top Quality" in the original warranty involved does not refer to the car but only to the warranty, that is, it is a top quality warranty and that the warranty is a limited one. The jury did not agree. Appellees urge that the statements originally made by the salesman as to the condition of the automobile constituted an express warranty as to the condition of the car and we agree. This case is similar to *Valley Datsun v. Martinez*, 578 S.W.2d 485 (Tex.Civ. App.—Corpus Christi 1979, no writ), in which a used car salesman stated to the buyer that the vehicle was "in excellent condition." The court, in affirming for the buyer, stated:

> The test of whether a salesman's statement constituted 'affirmations of fact', going to the very 'basis of the bargain' is whether the salesman was asserting a fact of which the buyer was ignorant, or whether he was merely declaring his belief with reference to a matter of which he had no special knowledge and of which the buyer may also have been expected to have an opinion. *United States Pipe & Foundry Co. v. City of Waco*, 130 Tex. 126, 108 S.W.2d 432 (1937); *General Supply and Equipment Co., Inc. v. Phillips*, 490 S.W.2d 913 (Tex.Civ.App.—Tyler 1972, writ ref'd n. r. e.). Here, the salesman, when he told plaintiff that the camper was in 'excellent condition,' was obviously asserting a fact of which plaintiff was ignorant. Under the circumstances existing, this statement was more than mere 'dealer's talk' because knowledge of the seller, in conjunction with the buyer's relative ignorance, operates to make the slightest divergence from mere

praise into representations of fact, which become effective as a warranty. *United States Pipe*, supra. The statement constituted an express warranty.

*Id.* at 490. The jury's findings with regard to representations and warranty are all sufficiently supported by the record.

## SOLD FOR SALVAGE

■ Appellant complains that the trial court erred in permitting the introduction of testimony and documentary evidence and in submitting special issues which refer to the automobile as "sold for salvage" or "salvaged". It also complains. that the trial court erred in admitting into evidence the title history of the automobile. Appellant contends that the use of such term with reference to the car was prejudicial to appellant and that it referred to a fact not in evidence. Appellees' petition alleged that the car had previously been sold for salvage. The title history of the car which was received into evidence contains a "Salvage Certificate of Title." The testimony at the trial leaves no doubt that the car had been severely damaged in the previous accident. Hilry Jones, the owner of the automobile at the time of the first collision and the driver of the automobile at such time, testified that the car was "totaled" and that the car was totally damaged in the accident. There is testimony by other witnesses that the car had been badly damaged. We find no reversible error.

## DECEPTIVE TRADE PRACTICE

■ By one point of error appellant complains that the trial court erred in instructing the jury that a false, misleading or deceptive act or practice means any conduct which is either false or which has the capacity or tendency to mislead or deceive the ignorant, the unthinking and the credulous. It is appellant's contention that such instruction was error because it did not include an instruction that the person misled must be an ordinary person, though ignorant, unthinking or credulous. We disagree. The instruction complained of is substantially the same as that approved in oth-

er cases including *Barnhouse Motors, Inc. v. Godfrey*, 577 S.W.2d 378 (Tex.Civ.App.—El Paso 1979, no writ). We find no error with regard to submission of such special issue.

## NOTICE OF COMPLAINT

■ By one point of error appellant complains that there is no evidence that appellant was given written notice of appellant's complaint at the time the suit was filed, July 28, 1977. Section 17.50A of the Deceptive Trade Practices and Consumer Protection Act permitted appellant to limit his liability to actual damages and to attorney's fees if he proved he had no written notice of the consumer's complaint before the suit was filed. This notice of defense did not become effective until May 23, 1977, long after the facts of this case occurred. Guerrero testified that his attorney wrote appellant of their complaints and there was introduced into evidence a letter which was sent by plaintiffs' attorney to Chrysler-Plymouth City, which letter was received by Chrysler-Plymouth City according to a return receipt card thereon on February 1, 1977, a considerable period of time before plaintiffs' original petition was filed. Moreover, there were various conferences between the Guerreros and Chrysler-Plymouth City pertaining to the Guerreros' complaints which culminated in the Guerreros being told to go ahead and sue if they desired. The defenses in section 17.50A of the Deceptive Trade Practices Act are in the nature of confession and avoidance and are affirmative defenses. The burden of proof when establishing an alleged affirmative defense is on the party asserting it. *Harris v. Rowe*, 593 S.W.2d 303 (Tex.1980); *Anderson Development Co. v. Producers Grain Corp.*, 558 S.W.2d 924 (Tex.Civ.App. —Eastland 1977, writ ref'd n. r. e.). Appellant failed to offer any evidence of lack of notice and did not meet its burden of proof. Plaintiffs did offer evidence of presentation of written notice. Appellant's point of error is overruled.

## PROXIMATE CAUSE

■ Appellant complains that there was no finding or evidence that the purported

breach of express warranty was a proximate cause of any loss in value of the car. Proximate cause needs to be shown only where the buyer seeks consequential damages under the Texas Business and Commerce Code § 2.715. In the case herein appellees were seeking damages for breach of warranty under section 2.714, not for consequential or incidental damages under section 2.715. There was no need for a proximate cause issue or finding. *See Calloway v. Manion*, 572 F.2d 1033 (5th Cir. 1978) (applying Texas law); *Lanphier Construction Co. v. Fowco Construction Co.*, 523 S.W.2d 29 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.).

## ATTORNEY'S FEES

Appellant urges that there is no evidence or insufficient evidence to support the jury's findings regarding attorney's fees. The jury found appellees' attorneys were entitled to $3,500 for legal services rendered in the preparation for and trial in the district court, $1,000 additional if appealed to the court of civil appeals and $500 if an application for writ of error is made to the supreme court.

It is clear that attorney's fees are recoverable under the Deceptive Trade Practices Act. At the time this cause of action arose, section 17.50 of the Act provided that a consumer could recover attorney's fees for the amount of work expended. Paul Keller, attorney for appellees, testified in some detail. He stated that he was licensed to practice in 1975 and had been practicing in San Antonio for approximately three years. He testified in considerable detail as to the type and amount of work he did in this case, including many hours of research and taking several depositions in preparation for the case including two out of town depositions. Mr. Keller testified that the case was tried to a jury which took four days. He testified that the hourly rate charges in San Antonio vary from $40 to $100, depending on the nature of the work and the experience of the lawyer involved. He testified that he had spent at least 100

hours in the preparation of the case and that a fee of $3,500 would be a reasonable and necessary fee for his services through the trial court. He further testified as to what would be involved in an appeal and that a reasonable and necessary fee would be $2,000. He also testified that if a writ of error were filed in the supreme court, this would entail additional work in briefing and that $500 would be a reasonable and necessary fee and another $500 would be reasonable and necessary if the writ were granted.

The jury had before it full and detailed testimony with regard to the amount of work involved and testimony as to what a reasonable and necessary fee for such work was. We find sufficient evidence in the record to support the attorney's fees awarded. *See Gulf Paving Co. v. Lofstedt,* 144 Tex. 17, 188 S.W.2d 155 (1945); *Mecey v. Seggern,* 596 S.W.2d 924 (Tex.Civ.App.—Austin 1980, writ ref'd n. r. e.).

Appellant presents several points of error which we do not deem necessary to discuss herein because of the recent decisions of the supreme court in *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980).

We have concluded that the jury's answers to the material special issues here involved are sufficiently supported by the record and that such answers furnish an adequate basis for the judgment entered by the trial court. All of appellant's points of error have been considered and all are overruled. The judgment of the trial court is affirmed.