

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-18-00121-CV

MINDY M. RICE

APPELLANT

V.

NATALIE FIX AND ALLSTATE FIRE
AND CASUALTY INSURANCE
COMPANY

APPELLEES

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-06112-367

----------

## MEMORANDUM OPINION[1]

----------

Appellant Mindy M. Rice appeals from the trial court's take-nothing judgment in Rice's personal-injury suit against appellee Natalie Fix. She argues that the trial court abused its discretion by excluding a portion of her medical evidence and that the evidence was factually insufficient to support the jury's

---

[1]*See* Tex. R. App. P. 47.4.

findings that Fix was not negligent and that Rice sustained no compensable damages. Because the evidence supported the jury's finding of zero damages, rendering any other presumed error harmless, we affirm the trial court's judgment.

On December 15, 2012, at 12:49 p.m., Fix was driving her mother's SUV on an interstate in heavy, stop-and-go traffic behind a car driven by Rice. After they passed an accident that was on the shoulder of the interstate, traffic began to speed up. Fix believed she kept a safe distance from Rice's car, but Fix admitted that "obviously" she did not because when Rice slowed down again for traffic, Fix was unable to stop and ran into the rear of Rice's car. Fix estimated she was going five miles per hour when she hit Rice. Nevertheless, the force of the collision caused Rice's car to hit the rear of the truck in front of her, which was driven by Rice's boyfriend Andrew Carroll. Carroll saw the wreck in his rearview mirror and observed Rice's head snap back when Fix hit her and then forward when Rice hit his truck. But Rice did not hit her head during the wreck and her air bag did not deploy.

The police officer who was present at the earlier wreck on the shoulder, responded to the scene. He concluded that Fix failed to control her speed, which was a contributing factor to the accident. There was no indication that any of the drivers were distracted. All three vehicles were drivable; in fact, the responding officer rated the damage to each car as zero or one on a five-point scale.

Carroll and Rice dropped her car off at a collision-repair shop and continued their trip to Houston in Carroll's truck. During the trip, Rice's head, neck, and back began to hurt and she experienced nausea. Carroll took Rice to an emergency room when they arrived in Houston, where she was diagnosed with a cervical and thoracic "sprain/strain." Thereafter, Rice experienced balance issues, severe headaches, and blurred vision. And Rice stated that the chronic back pain she had before the wreck, which was caused by a congenital back condition, worsened after the wreck. Eventually, a lumbar peritoneal shunt was surgically implanted into Rice's lower back to drain excess spinal fluid into her abdomen. As a result, Rice was unable to attend the physical-therapy program she had been accepted into and was advised not to have children.

On August 8, 2014, Rice filed suit against Fix and Rice's underinsured carrier, appellee Allstate Fire and Casualty Insurance Company.[2] Rice alleged that Fix's actions were negligent, proximately causing her severe bodily injuries. At trial, Fix testified that she accepted responsibility for the wreck and that "as far as [she] could tell," she was at fault.

Rice testified to her pain and suffering that she alleged were caused by the wreck, including headaches, complications from the shunt procedure, and back pain. She further testified that her lifestyle was altered by the wreck, causing her to forgo physical-therapy school, recreational activities, and plans to start a

[2]Allstate did not participate in the trial but agreed to be bound by any judgment.

3

family.  But she also admitted that before the wreck, she had chronic back pain from a congenital deformity and frequent headaches that she sought medical treatment for.  Further, she testified that she was employed as a "safety professional" and had recently been hired at a better job with better pay than before.

Rice presented medical evidence from her neurologist, Dr. Lee S. Pollack, whom she began seeing about two months after the accident at Carroll's suggestion.  Pollack explained that Rice had a "dysfunction in the flow of spinal fluid within the brain," necessitating the placement of the lumbar peritoneal shunt.  He posited that the dysfunction could have been caused by "some inapparent migrainous white matter disease" combined with "a shear injury from a closed head injury."  He testified that Rice had a rare complication with the shunt that causes her post-operative pain but that the complication was "like a genetic thing."  The shunt limits Rice's level of physical activity and causes her a "pretty high level of pain."  Pollack also stated that Rice had congenital fusions to her cervical and lumbar vertebrae, a congenital malformation of her spinal nodes, and a herniated disc below the fused cervical vertebrae.  Pollack opined that the herniated disc was aggravated, but not caused, by the wreck.  Rice also attempted to introduce Pollock's testimony that Rice had a symptom— "decreased arm swing"—that "suggest[s]" she could develop Parkinson's disease "at a later date"; but the trial court excluded the testimony because any probative value was outweighed by its unfair prejudice.  *See* Tex. R. Evid. 403.

4

Fix presented controverting medical testimony from a consulting neurologist, Dr. Jorge Romero. Romero opined that Rice's spinal-fluid problem was similar to her spinal fusions because it was a "developmental and congenital abnormality"—she was born with it. He testified that Rice's medical records gave no indication that her medical issues for which she sought recovery were caused by the car wreck. In Romero's medical opinion, the shunt procedure was unnecessary and her symptoms were not a result of the wreck. Romero recognized that the wreck caused Rice to have a cervical strain or sprain but that such injury "usually subsides relatively quickly."

The trial court's charge[3] asked the jury in two questions whether any negligence by Fix proximately caused "the occurrence in question" and what sum of money would fairly and reasonably compensate Rice for her injuries "that resulted from the occurrence in question." In assessing damages, the jury was to provide amounts for past physical pain and mental anguish, future physical pain and mental anguish, past physical impairment, future physical impairment, and

---

[3]The clerk's record does not contain the trial court's jury charge that was signed by the trial court, signed by the jury foreman, and file-stamped by the trial court clerk. See Tex. R. App. P. 34.5(a)(4). We contacted the trial-court clerk, who represented to this court that there was no signed and filed jury charge. See Tex. R. App. P. 34.5(d). Indeed, Rice attached an "[a]greed copy" of the charge and verdict to her appellate brief, recognizing that the original was lost. See Tex. R. App. P. 34.5(e). In addition to this agreed copy, the court reporter stenographically recorded the charge conference, the contents of the charge as the trial court read it to the jury, the jury's resulting verdict, and the jury poll. Based on this record evidence and mindful of the fact that no party raises jury-charge error, we are able to determine the content of the jury charge and the jury's verdict for purposes of this appeal. See Tex. R. Evid. 1004.

5

future medical-care expenses. The damages question was not conditioned on an affirmative response to the liability question, but no party objected to the failure. *See generally* Tex. R. Civ. P. 277 ("The court may predicate the damage question or questions upon affirmative findings of liability."). The jury unanimously found that Fix's negligence did not proximately cause the occurrence and found "zero" for each damage category. The trial court rendered a take-nothing judgment on Rice's negligence claim.

Rice filed a motion for new trial, arguing that the jury's answers were against the "overwhelming weight of the evidence." *See* Tex. R. Civ. P. 324(b)(3). The trial court denied the motion. Now on appeal, Rice argues that the jury's findings were against the great weight and preponderance of the evidence, which is a challenge to the factual sufficiency of the evidence. She also argues that the trial court abused its discretion by excluding Pollock's testimony that Rice's decreased arm swing indicated she could develop Parkinson's in the future.

Rice's sufficiency arguments require a combined analysis. When a party attacks the factual sufficiency of an adverse finding on an issue on which she had the burden of proof, she must show that the adverse finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). When we review such an assertion, we must consider and weigh all of the evidence and may set aside the finding only if the adverse finding is so contrary to the overwhelming weight of all the

6

evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g).

The evidence adduced at trial indicated that the accident occurred as a result of Fix's inability to stop before hitting Rice in stop-and-go traffic. Indeed, Fix testified that she accepted responsibility for the accident. And Fix's attorney recognized this evidence in closing jury argument by stating that "[c]learly, we know what happened" at the time of the accident. But even assuming without deciding that the jury's answer to question one—Fix's negligence did not proximately cause the accident—was against the great weight and preponderance of the evidence, we conclude that the jury's answer to question two—that Rice suffered no personal-injury damages as a result of the wreck— was not against the great weight and preponderance of the evidence.

The jury was instructed to award Rice no damages for a condition that existed before the wreck and that was not aggravated by the wreck. Additionally, the jury was directed to award no damages for any condition that did not result from the wreck. The jury heard evidence that Rice's conditions were not a result of the accident but were congenital. Indeed, Rice previously had sought medical treatment for her headaches and back pain. Romero testified that even with Rice's congenital conditions, the lumbar peritoneal shunt had been unnecessary. Although Romero recognized that Rice suffered a cervical strain or sprain as a result of the accident, her severe pain and lifestyle restrictions were not related to this quickly resolved condition, and Rice did not seek damages for her past

7

medical expenses. Even though Pollock testified that Rice's back pain was aggravated by the accident, the jury was the sole judge of the credibility of and weight to be given to the competing, expert testimony. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *Hutchison v. Pharris*, 158 S.W.3d 554, 567–68 (Tex. App.—Fort Worth 2005, no pet.); *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 861 (Tex. App.—Fort Worth 2003, pet. denied). Weighing the competing evidence regarding Rice's damages, we cannot say that the jury's finding of no damages was against the great weight and preponderance of the evidence such that it was clearly wrong and manifestly unjust. *See Chapman v. Browder*, No. 09-09-00061-CV, 2009 WL 5574371, at *3–4 (Tex. App.—Beaumont Jan. 28, 2010, no pet.) (mem. op.); *cf. Hutchison*, 158 S.W.3d at 567–68 (holding jury was entitled to weigh competing, expert testimony and determining jury's no-causation finding supported by factually sufficient evidence).

Because the jury's zero-damages award was supported by factually sufficient evidence, its no-negligence finding is rendered harmless even if it were against the great weight and preponderance of the evidence. *See* Tex. R. App. P. 44.1(a)(1); *Chapman*, 2009 WL 5574371, at *4; *Hutchison*, 158 S.W.3d at 562–63; *cf. Espinosa v. Schomberg*, 601 S.W.2d 161, 164 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (finding no reversible error from jury's zero-damages finding even if supported by insufficient evidence because jury's finding of no negligence was so supported); *Sendejar v. Alice Physicians & Surgeons Hosp.*,

8

*Inc.*, 555 S.W.2d 879, 885–86 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (holding jury's finding of no negligence by defendant renders any error in submission of plaintiff's contributory negligence immaterial). And any abuse of discretion based on the trial court's exclusion of Pollock's opinion regarding the possibility Rice could contract Parkinson's disease similarly did not affect Rice's substantial rights or cause the rendition of an improper judgment because Romero's testimony sufficiently supported the jury's no-damages finding even considering this portion of Pollock's expert testimony.[4] *See* Tex. R. App. P. 44.1(a)(1); Tex. R. Evid. 103(a); *Garden Ridge, L.P. v. Clear Lake Ctr., L.P.*, 504 S.W.3d 428, 441–42 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *State Office of Risk Mgmt. v. Edmondson*, 305 S.W.3d 344, 350–51 (Tex. App.—Dallas 2010, no pet.).

Because the jury's finding of no damages was supported by factually sufficient evidence, rendering the presumed error of the jury's no-negligence finding harmless, and because the exclusion of Pollock's Parkinson's-propensity testimony did not affect Rice's substantial rights or result in the rendition of an

---

[4]Additionally, Rice is incorrect that the exclusion of the Parkinson's-propensity evidence was reversible error. The trial court's exclusion of this evidence, which did not pertain to any condition Rice had actually been diagnosed with and was no more than a mere possibility or conjecture, was not an abuse of its discretion. *See* Tex. R. Evid. 401, 403; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010); *cf. Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711–12 (Tex. 1997) (stating that expert's causation opinion based on possibility, speculation, or surmise is not evidence).

improper judgment, we overrule Rice's issues and affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  MEIER, GABRIEL, and BIRDWELL, JJ.

DELIVERED:  June 28, 2018